JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar No. 7709
AFROZA YEASMIN
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Afroza.Yeasmin@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALEXANDER SCOTT DERRINGER,

    Defendant.

Case No. 2:23-cr-00039-JCM-NJK

**Government's Sentencing Memorandum**

## I. INTRODUCTION

The government recommends that the Court impose a sentence of 108 months of imprisonment, followed by 20 years of supervised release. As enumerated in the plea agreement, the government recommends that the Court apply a three-level downward variance to the sentencing guidelines range as calculated with all five specific offense characteristics, and then impose a sentence at the low end of the resulting guidelines. A sentence of 108 months is sufficient, but not greater than necessary, to further the goals of sentencing for the defendant's conduct in the instant matter. In addition, the government, consistent with probation, requests a term of supervised release of 20 years with all the conditions recommended by United States Probation.

## II. STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

### A. CYBERTIPS

On June 1, 2021, the National Center for Missing and Exploited Children ("NCMEC") received a CyberTip from Kik Messenger that one of its users uploaded and shared child pornography with other users or groups of users. Specifically, the CyberTip indicated that user "dudewhat875" with email address jackreach9991@gmail.com uploaded and shared 74 files of child pornography. The CyberTip indicated that Kik had reviewed all 74 files that it reported. The CyberTip also reported that the files were uploaded between April 9, 2021 and April 24, 2021.

On August 23, 2021, NCMEC received a second CyberTip from Kik Messenger regarding a user who uploaded and shared child pornography with other users or groups of users. According to this CyberTip, user "joebidong" with email address johnkek68@gmail.com uploaded and shared 63 files of child pornography. The CyberTip indicated that the user uploaded child pornography between July 29, 2021 and August 2, 2021.

IP addresses provided by both the June 2021 and August 2021 Cybertips geolocated to the Las Vegas area and investigators with the Federal Bureau of Investigation (FBI) learned that the physical address associated with the CyberTips was 1451 Orange Jubilee Road in Henderson, Nevada. The defendant was residing at this location in 2021 and had resided there since 2015 with his then wife, their child in common, and his father-in-law.

### B. RESIDENTIAL SEARCH WARRANT

A residential search warrant was executed on October 14, 2021, that resulted in the seizure of, among other devices, two (2) cellphones belonging to the defendant. Those cell phones contained child sexual abuse material ("CSAM").

2

1. <u>Samsung Galaxy S9 cell phone (IMEI: 355028090729106)</u>

A Samsung Galaxy S9 cell phone with IMEI number 355028090729106 was recovered from under the bed in the master bedroom. Forensic analysis revealed that it contained CSAM on the messaging application Kik, and email address jackreach9991@gmail.com. A total of 2,330 images and 269 videos of CSAM were found on this phone. This included 33 of the 70 unique files provided in the June 2021 CyberTip regarding the "dudewhat875" Kik account.

There was significant data on the phone connecting it to the defendant. The device user account was listed as "Alex Derringer" and a review of the contacts denoted known family members of the defendant's such as his father-in-law. Additionally, the defendant's Facebook and Instagram accounts were both logged into on the cellphone with IMEI ending 9106, and the autofill options present on the phone matched the defendant's pedigree and occupation. Between August 2018 through October 2021, the defendant was employed by Ferron Elementary School, in Las Vegas, as a second-grade teacher.

There were also what appeared to be surreptitious photographs taken of students in a classroom as well as photographs taken of students on Zoom sessions. Law enforcement confirmed the identify of one of the children depicted in the images as a student taught by the defendant in his second-grade classroom.

None of these images depicted nudity, but the pictures did not appear appropriate. For example, Derringer had photographs of a child lying on a bed during a Zoom session, a photograph of a child bent over, and a child whose underwear was visible from the way the child was seated.

Additionally, there were also indications that the defendant was actively seeking child pornography on the cellphone with IMEI ending 9106, as auto-fill values for "little boy," "little boy masturbates," "loli," and "young nude" were all present on said phone.

  **2.** <u>Samsung S9 cellphone (IMEI: 359943090337104)</u>

Forensic analysis of the Samsung S9 cellphone with IMEI number 359943090337104, seized from the defendant's person, revealed that it contained 254 files of child pornography. This included 26 of the 62 unique files provided in the August 2021 CyberTip regarding the "joebidong" Kik account. The Kik application was found installed on this phone. There were also indications on this phone that the defendant was actively seeking child pornography as auto-fill values for "little boy," "loli," and "young boy cum" were present on the phone, as well as prior searches for "kik" and "young nude model." In addition to the instant cellphone being on the defendant's person, similar data indictors as the ones discussed for the other cellphone were also present on this phone linking the phone to the defendant.

  **C.** **PROCEDURAL HISTORY**

On March 1, 2023, a two-count indictment was filed charging the defendant with Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1) (Count 1); and Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 2).

Defendant subsequently pleaded guilty to Count 1, Distribution of Child Pornography, on June 5, 2024. The matter is currently pending sentencing.

  **III.** **APPLICATION OF SENTENCING GUIDELINES**

The sentencing guideline calculations included in the presentence report ("PSR") are correct and the government asks this Court to adopt them at sentencing.

As to Count One of the indictment, Distribution of Child Pornography, defendant's base offense level is 22.[1] There is a total of a fifteen-level upward adjustment for the specific offense characteristics of CSAM depicting prepubescent minors, knowing distribution of said CSAM, CSAM depicting the abuse of infants, toddlers, or S&M, the use of a computer and the offense involving more than 600 images.[2] Accordingly, the adjusted offense level of Count One, prior to the acceptance of responsibility, is 37.

Given defendant's acceptance of responsibility in a timely manner, defendant's total adjusted offense level is 34. The defendant's criminal history category is I resulting in a guideline range of 151 – 188 months. Per the Plea Agreement, the government requests the Court apply a three-level downward variance and impose a sentence of imprisonment on the low end of the resulting guidelines, specifically 108 months.

### IV.     ARGUMENT

**A.     A SENTENCE OF 108 MONTHS OF IMPRISONMENT IS APPROPRIATE WHEN LOOKING AT THE TOTALITY OF DEFENDANT'S CONDUCT AND BEHAVIOR.**

<u>**1.     THE DEFENDANT VIEWED AND DISTRIBUTED CHILD PORNOGRAPHY THROUGH THE USE OF TWO CELLPHONES AND WHILE HOLDING A POSITION OF AUTHORITY**</u>

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment."[3] The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the

---

[1]     *See* U.S.S.G. § 2G2.2(a)(2).
[2]     *See* U.S.S.G. § 2G1.2(b)(2), (b)(3)(F), (b)(4), (b)(6), and (b)(7).
[3]     *United States v. Carry*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

5

need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution.[4] Considering the relevant factors, the Court should impose a 108-month sentence with a 20-year term of supervised release.

In 2021, while employed as a second-grade teacher, and as the father of a non-verbal autistic daughter, who was only 5 years old at the time, the defendant possessed over 2500 images and 269 videos of child sexual abuse material across two cellphones. The child sexual abuse material depicted prepubescent minors, as young as infants, being penetrated vaginally and orally by adult penis' and other sexually abusive conduct.

The defendant also distributed at least 132 files, many of which were video files,[5] of child sexual abuse material utilizing messenger application Kik that depicted similar abuse as the type described above. Additionally, on both of his devices there were indicators that he was actively seeking out more CSAM to add to the massive collection he already collected on each device.

The defendant's victimization of children did not end there, he abused his position as an academic with access to second-graders, children of at most 8 years in age, by taking photos of them in compromising positions when he was supposed to be teaching and caring for them.

As the defendant stated himself in his letter to the Court (ECF 41-1), his behavior is abhorrent and his conduct wholeheartedly refutes the notion that his actions can be

---

[4]   18 U.S.C. § 3553(a).
[5]   Because each video is equivalent to 75 images under the Guidelines, Derringer distributed far more than 600 images.

6

attributed to the devastation and isolation felt around the world by the 2020 global pandemic as argued in the defendant's sentencing memo (ECF 41). The defendant, who was gainfully employed at a time when many were not, and surrounded by family, co-workers, and children, at a time when many were losing loved ones and experienced no personal connections, did not lean on these venues to fulfill needs of connection or hope. No, he instead turned to a pastime of victimizing young children through the viewing and sharing of child abuse content. His conduct related to CSAM was not exclusively or even predominantly tied to Kik. Two cellular devices were loaded with large amounts of abuse content, while he actively sought out more on the internet. This is evidenced by the searches recovered on both phones. These are not the actions of a person trying to build connections, these are the actions of a man satisfying his own deviant sexual desires.

His blatant disregard for the harm caused by this behavior is only further demonstrated by his abuse of authority in a classroom of second graders. Though, fortunately, the images taken of these children were not nude, the positions they were in, the exposure of underwear, and the sheer disregard for their privacy highlights the defendant's willful disregard for the safety of children when it comes to satisfying his own wants.

To the defendant's credit, he has been in compliance with pre-trial conditions and has accepted responsibility in a timely manner after getting caught. The government, however, refutes the notion that his shame is the reason he lied to law enforcement when questioned about the Kik accounts and exercised other measures to conceal his activities. The aforementioned conduct that the defendant engaged in is consistent with trying to avoid getting caught. The defendant, despite having access to a cellphone he regularly used in daily life, which contained CSAM, hid a second cellphone containing CSAM in the mattress of his marital bed. An emphasis needs to be put on the fact that both devices had

active searches for CSAM as it demonstrates his unwillingness or inability to refrain from this conduct, and the calculated steps taken to continue and conceal the behavior.

A sentence of 108 months of imprisonment is necessary to reflect the seriousness of the offense, the totality of defendant's conduct, and provide just punishment and deterrence. Any lessor sentence would be insufficient and a deviation from the stipulated sentencing guideline enhancements would distort the clear picture of defendant's complete culpability.

**2.  THE SPECIFIC OFFENSE CHARACTERISTICS REGARDING THE AGE OF THE VICTIMS, THE USE OF A COMPUTER, AND THE OFFENSE INVOLVING MORE THAN 600 IMAGES ARE NECESSARY TO ACCURATELY REFLECT THE TOTALITY OF DEFENDANT'S CONDUCT**

The base offense level for a violation of 18 U.S.C. § 2252A(a)(2) (Distribution of Child Pornography) is 22 under USSG §2G2.2(a)(2). There are five (5) specific offense characteristics associated with how the defendant distributed child pornography in the instant matter. These specific characteristics are 1) the abuse material involved a prepubescent minor, 2) the defendant knowingly engaged in the distribution, 3) the abuse material portrays either sadistic conduct or the sexual abuse of an infant or toddler, 4) the use of a computer, and 5) the offense involved more than 600 images. Each specific characteristic is applicable to the defendant's specific conduct in the instant matter and increases the base offense level by 15 levels. Not only does his conduct give rise to the applicability of each and every specific characteristic but omission of any specific characteristic erodes the culpability of the defendant by diminishing the totality of his conduct and the subsequent harm he caused.

Defendant's sentencing memorandum (ECF 41) essentially argues that the inclusion of the specific characteristics of 1) the depiction of the sexual abuse involving an infants and

prepubescent minors, 2) the use of a computer, and 3) the offense involving more than 600 images artificially enhances the defendant's sentencing guidelines as each of these enhancements are so commonplace in the commission of the instant offense, distribution of child pornography. On the contrary, the defendant's conduct refutes this entire argument because he not only engaged in every specific offense characteristic enumerated above, but his actions compellingly demonstrate why such enhancements and distinctions exist in the first place.

The first two specific characteristics both deal with the age of the child being abused in the CSAM. The guidelines differentiate offense level increases based on the age of the child depicted in the abuse material. The younger the child, the higher the increase. The sentencing commission more greatly punishes offenders viewing and distributing the sexual assaults and rapes of children, as young as infants. This is both appropriate and necessary because the harm in these instances is exponentially greater. The distinction exists as it is a vital key in assessing the true extent of the harm caused by the defendant's distribution of child pornography. The omission of the child's age erodes the true culpability of the defendant's actions and the subsequent harm he caused.

The defendant, as evidenced by his internet searches on both cellphones, specifically sought out young children. His search terms included: "little boy," "little boy masturbates," "loli," and "young nude." The term "loli" is ubiquitously used among offenders and is understood to mean "young girl" or "underage female with childlike features and appearance." The massive collection of CSAM found on both phones and distributed by the defendant further demonstrates the defendant's affinity for infants and prepubescent minors. His interest in prepubescent children is only further illuminated by the photos he took of the second graders under his care.

9

It is important to note the defendant's specific age range of choice, and the steps he took to accomplish his sexual goals, as it is not by accident that he sought out, retained, and distributed CSAM depicting the sexual assaults of prepubescent, infant, and toddler victims. The specific offense characteristics involving age concretely apply to the purposeful conduct engaged in by the defendant and his culpability is not diminished by the fact that many offenders often engage in this exact behavior. It is exactly because the abuse of very young children is so rampant and the subsequent harm compounds on itself that the difference in punishment exists. To absolve this defendant of his specific targeting of young children would unduly distort his commission of the crime of disturbing child pornography of very young children.

Similarly, regarding the specific offense characteristics of the use of a computer and the offense involving over 600 images, this enhancement should not be omitted simply because distributors of child sexual abuse material often engage in these actions. The defendant's specific conduct compels the application of these characteristics. They are not inherent aspects of the commission of the crime, but rather are intentional steps taken by the defendant to satisfy his sexual desires.

The use of a computer in daily life has significantly increased since the inception of this enhancement, and with it so has the type and severity of harm that can be caused by the use of a digital device in the commission of child pornography crimes. It is illogical to believe that the use of a computer by virtually all offenders of the crime of distribution of child pornography should contribute to the eradication of the enhancement. The enhancement is in place to try to deter and mitigate the significantly greater types and severity of harm that is caused when using a digital device. This harm does not diminish through popularity, the harm is in fact compounded on itself and exponentially increased

*because* so many offenders are seamlessly seeking out, retaining, and sharing the abuse material with others. The wide application of this enhancement highlights the increasing dangers posed by offender's access to digital devices. The defendant should not gain benefit from the popularity of the use of a computer, especially when in the instant matter the defendant used not one but two different cellphones to fulfill is sexual desires.

The defendant had a cellphone on his person that he used to victimize children through the viewing, searching, and sharing of child pornography, but that was not enough. The defendant also hid a second cellphone in the mattress of the marital bed to have additional access to the viewing, searching, and sharing of child pornography. The specific characteristic of the use of a computer is not applied to the defendant simply because it is the most efficient and commonplace way to seek out, view, and share CSAM. Though that would be enough to compel this enhancement, defendant's specific conduct demonstrates the lengths he is willing to go to obtain very large quantities of CSAM and have it readily accessible at all times. The capabilities of two phones only attributes to the great harm that can be caused.

Harm such as accumulating a large collection of child pornography and sharing a large quantity of the same with other offenders. The final specific offense characteristic is the offense involving more than 600 images. Again, though advancements in technology have made it both quite easy and expected that data searches and downloads will provide a large quality of the desired content, the ease of committing a crime does not negate the culpability attributable to the defendant.

The defendant took intentional and repetitive steps to not just collect and view the abuse material of young children, but the repeated distribution of the same in large

11

quantities. The specific offense characteristics again specifically applies to the defendant's conduct and cannot be attributed to the norms of how this crime is committed.

To omit any of these specific offense characteristics is to unduly absolve defendant of the harm he caused when he engaged in the intentional conduct necessary to seek, retain, and distribute CSAM of young children. In light of the defendant's lack of criminal history prior to the instant offense and timely acceptance of responsibility, the government recommends the application of a three-level downward variance. However, that three-level downward variance is sufficient to reflect the defendant's mitigating characteristics. A 108-month term of imprisonment is sufficient but not greater than necessary to hold the defendant accountable for the totality of his actions and the subsequent harm caused by it.

**CONCLUSION**

Based on the above, this Court should sentence the defendant to a term of incarceration of 108 months, followed by a 20-year term of supervised release.

Respectfully submitted this 26th day of September 2024.

JASON M. FRIERSON
United States Attorney

 */s/ Afroza Yeasmin*
AFROZA YEASMIN
Assistant United States Attorney